20-1102 Moses-El v. City and County of Denver and for the appellant is Ms. Johnson you may proceed. Thank you may it please the court my name is Gail Johnson and I represent Clarence Moses-El. This is an appeal about the pleading standard and when a complaint may be properly dismissed for failure to state a claim under 12c6. Of course the Iqbal case requires that in order to survive a motion to dismiss a plaintiff's claim must be plausible on its face but here the district court took this plausibility standard from Iqbal elevated it to a heightened standard that requires a plaintiff's claim not only to be plausible on its face but also to dispel all other possible explanations for the conduct alleged. Even where the district court here found that malice was one inference that might be drawn from the facts in support of a claim of malicious prosecution the district court dismissed the claim ruling that other and other inferences were that were inconsistent with liability were possible and the district court ruled that that defeated the claim and specifically if you look at the language of the district court's ruling it clearly violates the supreme court's teachings in Iqbal and Twombly because what the district court said is that Iqbal requires Mr. Moseseal to plead facts that establish a probability of a defendant's liability. Iqbal made clear that the plausibility standard is not akin to a probability requirement that's at 566 U.S. at 678. Likewise Twombly held the same at 550 U.S. at 556 and I think it's worth this court examining this court's decisions in this context following Iqbal and Twombly. I direct the court's attention to Gee versus Pacheco from 2010. That involved a first amendment retaliation claim and this court held that the allegations may be improbable but they are not implausible. Accordingly they state a claim for relief and they should have been allowed to plead. What do you think happens if it's like a 50-50 toss-up? Does that make it a plausible allegation? Absolutely your honor. I think that what the law is pretty clearly is that if you have multiple plausible theories or inferences from the allegations if the plaintiff's claim for liability is one of those plausible theories then the case is allowed to proceed and dismissal would be improbable. I wonder about that and what I'm looking at is Ashcroft versus Iqbal of course and granted this is not completely clear but here's the court talks about it's not enough for facts to be merely consistent with liability. Just very quickly where a complaint fleets facts that are quote-unquote merely consistent with the defendant's liability it stops short of the line between possibility and plausibility of an entitlement to relief and then I see Judge Krieger saying that and I think you're on exactly the right point that I'm concerned about that the defendant acted that he must plead facts that taken in the light most favorable to him dispel a possibility that the defendant acted with mere negligence and I try to line those two things up and I wonder if it's not a little bit semantics with Judge Krieger if she's saying exactly what Iqbal's saying that you can't just come in and say we have this possibility and it's just as good as the rival interpretations when Iqbal says that's not enough and that's my sticking point right now can you help me with that? I'd be happy to try your honor. First of all to kind of start with I do not believe that this is merely a semantic distinction I do think it's a distinction of substance in Judge Krieger's ruling because again she specifically finds that an inference of malice is plausible and reasonable but then dismisses the claim anyway and I can get the court of sight to that I know it's in our briefs but to get to the substantive point about how do we Iqbal and Twombly dealt with a particularly vague set of facts that were stripped of context where the fact that the plaintiff was alleging was sufficient to demonstrate liability was itself subject to a very obvious alternate explanation that was not consistent with liability and so if I could be specific on the facts in Iqbal this sentence was literally that the this was a case involving detention of Arab-American Arab Muslims after 9-11 and the statement at issue was that the FBI under the direction of defendant Mueller had arrested and detained thousands of Arab Muslim men as part of its investigations of the offense of September 11th. The Supreme Court noted that the September 11th attacks were committed by 19 Arab Muslim men and then said that is an obvious alternate explanation for those arrests. Similarly in Bell Atlantic versus Twombly we have an antitrust case under the Sherman Act where the law is very clear that the context for such claims are that there are all kinds of parallel conduct that can be engaged in by economic competitors that do not count as a Sherman Act violation unless there's a specific conspiracy. The facts alleged in Mr. Moses' amended complaint are very different from the types of general facts there that are subject in both Iqbal and Twombly that are subject to an obvious alternate explanation. There are no such obvious alternate explanations. There may be defenses and arguments and inferences but certainly we edge and nudge past the allegations here nudge past into plausibility as just as Judge Krieger actually found. So to given it if I could just maybe illustrate with a factual example in the case. One of the allegations against Detective Defendant Huff would be that he one of the allegations supporting the malicious prosecution claim is that he knew that the victim of the sex assault originally said she couldn't name her attacker. He knew that she gave a physical description that matched Elsie Jackson. He knew that she then identified Elsie Jackson and that all of those things occurred before she had this narcotic. Well he told everybody that too. He didn't keep that to himself and then he died and I want to know how you can sue him after the claim the not the the claim statute has long ago expired. Assuming that that something happened. Um well so your honor he did die. We have sued his estate. He died a long time ago and the and under Colorado you've got to file a claim within a certain amount of time. But your honor we believe this case under Heck versus Humphrey and McDonough. Nothing to do with Heck versus Humphrey because he's dead. Um your honor I do believe that the rules still apply that until we have favorable termination we cannot meet the elements of a malicious prosecution claim. Well even after you got your favorable termination he had still been dead for years. Now I want to know what's the basis of your lawsuit against Detective Huff who did what he was told. He told what he found and he I think you want to go out on a charging horse and find the true answer when he's just an officer working for the DA. They're going to charge him with whatever they charged him with. It seems to me it's a frivolous case. Well your honor if I could back to the facts and perhaps this relates to my answer to Judge Phillips question because this would be a very different scenario if what we had alleged was simply Detective Huff didn't interview all of the potential witnesses. That would be the type of general statement that allegation that is consistent with a wide swath of innocent conduct and wouldn't. Yeah but he did that the victim had said Elsie Jackson was consistent with the physical description. He knew she identified him and he did not interview or investigate Elsie Jackson as a suspect. That's what the second amended complaint alleges. How many years ago was that? The investigation started in 87 and Mr. Moses was tried in 88. And when did he die? When did Huff die? I'm sorry your honor I don't remember that year off the top of my head. Ms. Johnson on the malicious prosecution claim I think if you boil down your argument is that the district attorney lacked probable cause to try your client for rape. Is it your position that there was no probable cause to arrest and try him in 1988? Yes it is because the only thing tying our client to this case was a dream narcotic dream induced identification following her saying she couldn't see the suspects and identifying other people. It is as if the district attorney said we're going to find probable cause based on something a psychic said. But there was no he was fine well what do you do with the T.S.'s eyewitness identification? I mean I think your position is that no reasonable district attorney in 1988 would have tried this case. Yet they have an eyewitness. Why doesn't that at least get us to probable cause and you know I'm far enough removed from from trying these cases but wouldn't there have been a preliminary hearing and before the before the first trial and you know obviously he had a right to appeal and you know I assume he lost those appeals he finally got some vindication in the 35c. But can we really say there was no probable cause in 1988 given a victim identification? Absolutely given the unusual nature of the victim identification here dreams are not reality. Narcotics cause you know dreams are fictitious. She knew Mr. Moses Hill from the neighborhood. If she had been able to identify him or the perpetrator she would have said so. She said the opposite to the opposite. Did this all come out to the jury? In other words you say it's a dream and that's not good enough but was the jury told was the victim cross-examined on this? Was the victim was the blood expert test cross-examined on the seven percent? To the extent all of those things came out before the jury then the jury still believed that the defendant was the rapist and if the jury can convict by beyond a reasonable doubt very difficult for me to see how there wasn't this low bar of probable cause. So your honor the jury heard some of that evidence not all of it with respect to the the fact you know these cases often arise where a jury has convicted and the jury was wrong. I mean if a prior conviction were insufficient to defeat a malicious prosecution claim for wrongful incarceration then we wouldn't be in it. That's why I asked did the jury hear it and you didn't really answer what I'm getting at was the defendant kept from telling the jury certain facts or did for example with the DNA the defendant elected not to have the sample tested so that's not really the government's problem or fault and if all of this was presented to the jury that the defendant could have presented and maybe didn't maybe chose not to then this lower standard of probable cause which you know it's not a stringent standard where you have a victim testifying you have them in the same area and any other evidence that came in that's not probable cause? Not when the victim's identification which is so flawed from the beginning and contradicts her own statements initially on the scene to the officers and then within the next 24 hours after the incident and where that identification is solely the product of a drug-induced deem. Was the jury called that? I'm sorry? Was the jury was she cross-examined on the dream? She was but again I don't think this defeats the claim I don't think there's any to be clear as the years go on and the prosecution you know the incarceration of Mr. Moses here continues the probable cause standard goes down even further but probable cause is a low standard but it doesn't mean nothing and I come back to it I'm sorry. I'll give you a little more time here but wouldn't the probable cause determination be an objective standard for the court you know for for this panel whether there was you know objectively enough probable cause in 1988 and then secondly you know you haven't sued you know you haven't sued any of the prosecutors from the 1988 trial and you know I'm not quite sure what your case would look like you sued the second trial prosecutors but wouldn't why wouldn't there be qualified immunity here on the second prong that it wasn't clearly established that a reasonable prosecutor could have relied on victim identification in choosing to proceed to trial even even if it was a losing trial? Well your honor for qualified immunity I would really direct this court's attention to Taylor versus Riojas the U.S. Supreme Court's recent decision in this area which I think reinvigorates the doctrine from Hope versus Peltzer which says that even when there isn't a case that has the exact same facts sometimes constitutional violations are so obvious completely unreasonable the conduct and people can be held liable if I may. Yeah I'll give you some rebuttal time I did have another question on the Mr. Brown's I'm sorry Mr. Jackson's he did not testify at the second trial correct he only testified at the 35c proceeding? Your honor he did not testify at the second trial but his testimony was read into evidence. Okay. He received the substance of it. Okay I missed that and then going going back in time a little the prosecutors that interviewed him at the jail you know it looked to me like the most reasonable explanation of that interview was to interview as part of their trial prep for the 35c proceeding. If that's correct wouldn't would they not be entitled to absolute immunity for the 35c proceeding and wouldn't that you know roll forward into the into the retrial? Your honor I don't think so first of all there was no trial to prepare for when they first went out and extracted and intimidated him into giving the false recantation. Wasn't wasn't wasn't the hearing already scheduled? The hearing was scheduled I'm sorry it wasn't the trial and there had been no new trial granted was what I meant your honor. But there was a 35c hearing granted so there was going to be an adversarial proceeding right? There was. Okay does that not count for absolute immunity purposes? I don't think I think that falls more in the realm of investigation which falls on the outside the scope of absolute immunity under the court's case law. Well I okay I see that but would you would you then say that the 35c proceeding if we disagreed with you would the 35c proceeding be the type of adversarial proceeding that would be where absolute immunity would be applicable? I guess if you disagree with me then you're holding that perhaps but I think again this is the first time they're going out to see him after they've received these statements it should it seems like it's investigation. Well you're not aware of a case one way or the other that says 35c proceedings are the equivalent of a of a trial proceeding? I'm not your honor and I would just also direct the court I think as the court did in the big case where there's an immunity question that's been raised and it has been passed on by the district court I think it makes sense for the district court to rule on that in the first instance. Thank you counsel I will give you some rebuttal time and I think from the appellees we're going to hear first from Ms. Lewis. Yes your honor may it please the court I'm Melanie Lewis and I represent the city and county of Denver the estate of James Huff and Dr. Brown Dressel. Before I get started I wanted to address Judge Kelly's question about the date that Mr. Huff died that was in 2006 and with regard to Heck versus Humphrey issue even if the claim against Mr. Huff didn't accrue until Mr. Moses Yield's conviction was invalidated the probate statute requires a claim to be brought against the state within four months of the accrual of a claim so it would be untimely even if the claim accrued in 2017 because the complaint was filed in December 2017 and the acquittal I believe was in well in 2016 excuse me it was in late 2016 which would have made the accrual of the claim against the estate on May or the deadline to file the claim on February 2017 so still wasn't timely. The district court applied the correct standard when it found the amended complaint failed to state a plausible claim against the Denver defendants and this court applying a de novo standard of review can affirm the district court's dismissal. Was it the correct standard do you think that it would be the correct standard for the district court to say you have to plead a probability? We agree that the district court used imprecise language in its order however the appellant focuses only on that language and doesn't look at the broader context of the order and the district court's clarification of its order in its order on the motion to amend the and in on de novo review looking at the facts of the the complaint they don't allege the element of malice which was at issue this is the element of the claim we're talking about. So if the district court did require a probability finding you're saying that would be error? I believe that Iqbal says that it's not a probability requirement it is a plausibility requirement. We have this language that the defendant loses because he failed to allege facts that dispel a possibility that sounds even harder than probability. That language is in the order but you have to look at the allegations of the complaint and what it alleges and let's talk about Dr. Brown-Dressel. It alleges that she didn't do DNA testing but keep in mind this was 1987 when DNA testing wasn't in use and even the complaint alleges that Mr. Moses-Yill's own attorney didn't do that. The complaint alleges that Dr. Brown-Dressel should have known that Mr. Moses-Yill was a strong secretor of type O blood antigens. Not that she actually did know that. The complaint alleges that texts and treatises existing at the time should have led her to the conclusion that there was a 93 percent likelihood that he was not the suspect. So these are should have known allegations which is the classic hallmark of negligence not of the malice standard that's required for a malicious prosecution claim. So looking at the complaint allegations the district court properly found that there's one speculative possibilities out there but this doesn't move the line across probability to the I'm sorry excuse me the plausibility line. So the district court's order on denying the motion to amend the judgment shows how she walks through that analysis. So we we believe that she applied the right the right standard even though there's some imprecise language in the order and this court can review it de novo and make the same conclusion district court reached. With regard to Detective Huff as another example the complaint alleges he destroyed the samples in 1995. However the complaint alleges discussions occurred between the prosecution Mr. Moses Eel's defense attorney in the court regarding that and there was a note made in the file which Mr. Huff didn't see. He looked only at the date of the evidence when he authorized this destruction. These are allegations of negligence not of bad faith that's required to as far as I mean um could you help me on the on that my probable cause questions that um you know do we have to go back to 1988 in this case on malicious prosecution or um can we look at what happened in the intervening years until 2016 and conclude that probable cause maybe it existed in 88 but it didn't exist in 2016 and been dissipated by you know these these other events and that therefore no reasonable prosecutor would have retried uh Moses Eel for this crime he was accused of. Your honor um I would defer that question to the counsel for the DA defendants because that may be for Mr. Ringel but you know that's fine if it's his question it's his question but um I think you know the probable cause as you said in the 80s that they had an eyewitness victim identification and the victim still insists today that this is the correct suspect and so that does establish probable cause. Just to briefly address before I turn it over to Mr. Ringel um the clearly established component of qualified immunity we did assert qualified immunity on behalf of both the individual defendants in our briefing and none of the authorities that were submitted as supplemental authority by the plaintiff recently or in the reply brief fundamentally changed the clearly established analysis. They involve cases where there's egregious misconduct which would make it clear to any official that what they were doing was unlawful not the gray areas that we're talking about here. So for the reasons stated in our brief we'd ask for you the court to affirm the dismissal of the claims against the estate um Dr. Brown-Dressel and the city and county of Denver. And with that I will turn over the time to Mr. Ringel. You may proceed. Thank you Ms. Lewis uh may it please the court Andrew Ringel on behalf of defendants of Pelley's, Mitchell Morrissey, Bonnie Benedetti and Jeffrey Carroll. Uh to start with uh Chief Judge Timcovich's question on the the probable cause would have to be 1988 based on the claims against Mr. Huff, Detective Huff and Dr. Brown-Dressel. The probable cause analysis for the retrial would be on uh whether there was probable cause at the time the retrial uh occurred. And it is our position that there is probable cause as the at the retrial occurred. As the court is well aware the probable cost standard is a low standard and it's important for the court to to recollect that the standard is the facts in the light most favorable to probable cause. And when you when you take it through that lens the eyewitness testimony even if uh as Ms. Johnson says she wants to make it incredible it isn't incredible. It is eyewitness testimony and the eyewitness testimony is something that has to be credited and there was probable cause. It's important for the court to remember that the case went to a jury uh the second time as well as the first time. And Ms. Johnson was the uh defense lawyer in the case and I know that she did a motion for judgment as of acquittal uh at the end of the prosecution's case. And that means that when it went to the jury as all of the court knows is the judge the Denver District Court judge decided that there was sufficient evidence to prove beyond a reasonable doubt that Mr. Moses Eel was the perpetrator of this crime. The jury acquitted him which is obviously their right to do but that doesn't vitiate the probable cause. The other purposes of this 1983 case is that is that an objective determination for the court or would that somehow be a jury question if we um you know if this ever if this eventually got to a trial? So um let me answer your question um judge two ways. One it's objective. It's just like a Frank's analysis your honor. It has to be an objective determination about whether or not there's probable cause to proceed. It's not a jury question. It can't be a jury question. And then the second thing and one of the things that we rely on in our brief that I think is important and um judge Timkovich's question uh highlighted it for me earlier. It's important to understand that Mr. Moses Eel was acquitted in the second trial. The malicious prosecution claim, the fairness claim, all of these claims don't have a basis because of the acquittal. There are no cases that say that if you're acquitted in a criminal trial you can state a malicious prosecution claim. That's not what the the law is. If the court looks at this court's own decision in the misconduct by government agents before or during trial, a defendant who is acquitted cannot be said to have been deprived of the right to a fair trial. The seventh circuit and the third circuit reached similar conclusions. In the supplemental authority that Ms. Johnson submitted a few days before the oral argument this this last weekend, she relies on a second circuit decision, the Frost decision, and that decision suggests in the context of a police case that there may be a broader fair trial right. But this court has never said that and the United States Supreme Court has never said that and that means there cannot be clearly established law. What you have here is prosecutors who made the prosecutorial judgment that they had sufficient probable cause to retry Mr. Moses eel based on the victim identification. And was there a motion to dismiss the indictment on the either lack of probable cause or been vitiated by I guess I call it newly discovered evidence. I don't know if there was, but but if there was, it had to have been denied because it went to the jury. Your honor, maybe Ms. Johnson can answer that. But I mean, they did. I'm sorry. Well, I just, um, the, um, the, uh, Mr. Moses yield would have known about the Jackson's, um, claim that he'd been coached and maybe, maybe Mr. Brown's, I don't know if that was disclosed, but they would have known that, that, um, Jackson felt he had been intimidated or coerced into recanting his testimony that would, that would have been available to, um, the, uh, Mr. Moses seal before the second trial, correct? That's correct. The issues related to whether Mr. Jackson recanted or unrecanted his testimony, which both happened was all as part of the 35 C hearing. But the Floyd Brown statement would not have been with that occurred at trial, correct? The Howard statement. Yes. The Wesley Howard statement was a trial statement. That's correct. Uh, where he, where he essentially bolsters the victim's identification of Mr. Moses yield by saying that she said something to him a few days later, or the day of the incident that indicated based on his nickname or something similar to his nickname that that was that, uh, that he was the perpetrator. That was why does, you know, why doesn't all that vitiate probable cause here even under, under an objective standard? Because when you take the facts and the light most favorable to the, uh, probable cause the victim's identification in and of itself establishes probable cause. There's no case that I'm aware of that says you can't have probable cause when a victim identifies somebody. Well, if you think she's lying, well, it's a credit. It's a credibility assessment. I mean, you know, you don't, you know, a da is not going to take a victim statement necessarily at face value. They're going to investigate and make a credible determination based on everything else. They know. Absolutely. But this court's role is to simply analyze whether there was probable cause based on the facts taken in the light, most favorable to the prosecution and the support probable cause. There is no analysis that gets into the mind of the D. A. About whether they should have done something, as Miss Lewis said, should have is a negligence standard. And what we're talking about here is substantive due process violations under the 14th Amendment. And as the court is aware, that requires intent that doesn't require negligence, and there isn't intent here. Ultimately, the district court's analysis with respect to district attorney defendants relies on causation on the one hand and the lack of allegations of malice on the other hand. And those two prongs that are required on all of these claims fall apart on the causation analysis. To the extent that there was any error that occurred or any misconduct that occurred related to the pre retrial proceedings and the retrial proceedings, the fact of the acquittal is dispositive. There cannot be a claim under the Constitution. Under these circumstances, no court has ever recognized that claim. No court has ever recognized a claim that says conduct during post conviction proceedings creates a malicious prosecution theory. As Chief Judge Jim Kovach understood earlier, the prosecutors and the prosecution in 1988, you know, the way that these facts are set up and the way that the facts are alleged in the complaint, when you peel them back and when you look at them, well, from a temporal perspective and a personal participation perspective and an in-court versus out-of-court perspective and a causation perspective, the claims fail under the analysis of 12B6, regardless of this court's conclusion about whether Judge Krieger had inappropriate probability language or not. Well, setting aside the kind of the fairness claims, I'm just focusing on the malicious prosecution. If we think a complaint plausibly alleges no probable cause, you know, favorable termination, I mean, I think you still have your malice point. But that type, you know, framed that way, that's a traditional 1983 claim, you know, it rises or falls on the complaint also. But the fact that he was acquitted, is it relevant to the malicious prosecution claim, is it? Absolutely, it is. Because malicious prosecution says you have to be convicted. There are no malicious prosecution claims when the person is acquitted. Because if the person's acquitted, they don't suffer an injury of constitutional dimension or constitutional magnitude. That's the whole point. All of the malicious prosecution's claims, because of the requirement of the favorable termination, it's when a conviction is undone for whatever reason. That's what exists. But what we have here is the conviction's undone for which none of my clients participated, and then there's a retrial resulting in an acquittal, which means that you cannot have the causation required under 1983, which has a causation requirement. You know, that's a fundamental requirement of the statute. Because of the acquittal, there is no causation of a violation of Mr. Moses Eel's constitutional rights. He may have a state law claim, Your Honor, but that's not what this court is here for, and that's not what's planned before this court. Your position is that if you spot them, that there's no probable cause, it has no effect on the outcome of this appeal. That's right, because there would be either absolute immunity for the conduct that happened during the retrial or the 35C, or there would be qualified immunity, because not only is there known to constitutional violation, but even if this court thinks that there can be a malicious prosecution claim when the criminal defendant is acquitted, there is no case that holds that from the United States Supreme Court or this court. That means qualified immunity has to apply as a matter of law. Are you aware of any case that holds the 35C proceeding would enable the government absolute immunity? I'm not, but it has all the hallmarks of it. It's an adversary proceeding in front of a judge where counsel exists and witnesses under oath and everything, all of the bells and whistles, if you will, of a criminal trial. A 35C hearing is exactly the same thing. It would be no different than a preliminary hearing before a trial where absolute immunity clearly applies to the actions of the prosecutor during a preliminary hearing. Would those be civil actions under Colorado law? A 35C, no, that's a criminal. Okay, great. All right. Ms. Anderson, is there any other questions for the panel or Mr. Ringel? I'll give you two minutes for, two and a half minutes, I'm sorry, for rebuttal. Two and a half minutes. There we go. Thank you. You're on mute. Ms. Johnson, you're on mute. There we go. Thank you, Your Honor. With respect to the claim that Mr. Moses Hill doesn't have a constitutional injury because he was ultimately acquitted at the second trial, I would direct this court's a couple of things. The Morgan case does not involve any kind of allegation of pretrial liberty being infringed. This case and the amended complaint here does have such allegations. Paragraphs 263 to 264 of the amended complaint allege that Mr. Moses Hill was incarcerated for a few days after the district court vacated his convictions. Then paragraphs 354, 376, and 439 talk about how he was on bond conditions for about a year. So that distinguishes this case from Morgan. If the court looks at the Armstrong case from the seventh circuit 2015, it distinguishes Morgan on similar grounds. Briefly with respect to the estate claim, I would direct the court, but I didn't answer correctly before, but I do want to remind the court is there is a statutory exception to the non-claim statute for when there's a liability insurer, and Denver here is a liability insurer for the estate. That's addressed at pages 38 and 39 of our reply brief. I think that exception also makes sense, the idea being we don't want to reopen estates after years and years, but there's a different analysis when there's an insurer who would be indemnifying, as is the case here. And then if I could turn to the malice question and malicious prosecution claim, the elements of a malicious prosecution claim, I direct the court to the language in this court's 2008 decision in Wilkins. It does not require a conviction at trial. It says the defendant caused the plaintiff's continued confinement or prosecution. That's the first element. So I think my friend across the aisle is respectfully, I think he's mistaken on that. To be sure, the fact that Mr. Moseseal was acquitted at the second trial is going to affect the amount of damages, but it doesn't go to the liability. And finally, I would just like to remind the court of its decision last year in, I may mispronounce it here, but McGledge, M-G-L-E-G versus J versus Gardner, which holds that for a malicious prosecution claim, malice may be inferred if the defendant causes the prosecution of the plaintiff without arguable probable cause. And of course, malice can be alleged generally under Fernandez and Rule 9-6B. I see my time has expired. We ask the court to reverse. Thank you. Thank you, counsel. Those are really helpful arguments. We appreciate the preparation that you put into that. You are excused. The case shall be submitted.